568 So.2d 1104 (1990)
STATE of Louisiana, Appellee,
v.
Terrance Keith HUNT aka Terry Hunt, Appellant.
Nos. 21642-KA, 21703-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*1105 Hunter, Scott, Blue, Johnson & Ross by Robert C. Johnson, Monroe, for appellant.
*1106 William J. Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., L. Douglas Lawrence, Asst. Dist. Atty., Monroe, for appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
NORRIS, Judge.
The defendant, Terrance Keith "Terry" Hunt, was originally charged in a four-count bill of information with (1) possession of methamphetamine with intent to distribute, LSA-R.S. 40:967; (2) possession of marijuana with intent to distribute, R.S. 40:966; (3) possession of a firearm by a convicted felon, R.S. 14:95.1; and (4) distribution of methamphetamine to a person under the age of 18, R.S. 40:981 C. By amended bills, the state changed Count 1 to charge possession of methamphetamine and amphetamine with intent to distribute; and severed the firearm charge. Hunt proceeded to a jury trial on the three CDS counts in early June 1989 and was found guilty as charged. About two weeks later he pled guilty to the firearm charge. Judge Joyce, who had presided at the CDS trial, sentenced Hunt to consecutive terms of 10, 10 and 20 years at hard labor on the respective charges (appealed as No. 21,642-KA). Judge Harrison, who had accepted the guilty plea, sentenced Hunt to a concurrent 10 years at hard labor (No. 21,703-KA). Hunt now appeals, urging that all the sentences are excessive; that those in No. 21,642-KA should not have been ordered consecutive; and that the evidence was insufficient to sustain the jury verdict. An assignment regarding special jury charges is neither argued nor briefed and is abandoned. URCA-Rule 2-12.4; State v. Williams, 338 So.2d 672 (La.1976). For the reasons expressed, we affirm.

Facts
In June 1988 the Metro Narcotics Unit conducted an investigation of alleged illegal drug activity at Hunt's house, 809 South 4th Street, Monroe. They obtained a search warrant and executed it on the afternoon of June 15. Upon entry, they found the defendant, 41-year old Hunt, and 17-year old Beverly Phillips. Officers did not interrupt a drug sale, and neither suspect had CDS on his or her person. Conducting the search, however, officers found a plethora of incriminating items, including numerous packets containing quantities of substances suspected as amphetamine, methamphetamine and marijuana; gadgets such as syringes, ampoules, scales, and a pipe, some of which also had residue suspected as CDS;[1] an account book listing dollars, dates and grams; two rifles, four shotguns, five pistols, ammo and reloading supplies; over $1,800 in cash and a $40 check. These and other items were seized and the suspects arrested.
Later that evening Hunt gave a recorded statement; by agreement, part of this was played at trial. In it he admitted the guns were his; that he had the marijuana and methamphetamine at the house for sale (the latter at $100 per 0.8 oz.); and that he had given (but not sold) crystal methamphetamine to Beverly Phillips earlier that day. He thought his marijuana on hand at the time of the search was about half a pound.
Linda Armstrong of the North Louisiana Criminalistics Laboratory testified that nine of the seized items tested positive for marijuana, a Schedule I CDS, for a total of nine ounces. She also testified that 13 seized items tested positive for amphetamine and one for methamphetamine, but she could not determine the total weight of these Schedule II CDS.
Sergeant Via, who headed the investigation, and Detective Smith, who participated in the search, both testified that the scales were drug paraphernalia used to measure quantities of drugs to be packaged and sold. Sgt. Boney said that the scales could be consistent with either commercial or personal use.
*1107 Beverly Phillips also testified for the state. She had been getting methamphetamine from Hunt. On June 15, he prepared a syringe containing a greyish liquid and gave it to her some 30 minutes or so before the police arrived; she shot it up. She was fairly sure it was methamphetamine, but she could not positively say it was not amphetamine. She had, however, pled guilty to simple possession of methamphetamine as a result of this incident.

Sufficiency of evidence
By his third assignment Hunt urges the evidence was insufficient to support his conviction on the CDS charges. In brief he concedes the evidence was sufficient to convict him of simple possession of amphetamine, methamphetamine and marijuana, but not to prove his intent to distribute them. He also argues the evidence does not sufficiently prove that he distributed methamphetamine (rather than amphetamine) to Beverly Phillips.
The constitutional standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La. 1984). The Jackson standard applies to all evidence, direct and circumstantial. State v. Wright, 445 So.2d 1198 (La.1984); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir. 1984), writ denied 463 So.2d 1317 (La.1985). Even so, because of the nature of circumstantial evidence and a statutory rule requiring it to exclude every reasonable hypothesis of innocence, the Jackson standard must be carefully observed and methodically implemented in cases that hinge on circumstantial evidence. LSA-R.S. 15:438; State v. Chism, 436 So.2d 464 (La.1983); State v. Nealy, supra. Ultimately all the evidence must meet the Jackson standard by convincing a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Wright, supra.
One of the offenses with which Hunt was charged was distribution of methamphetamine to a person under the age of 18 and at least three years his junior. R.S. 40:981 C. The state introduced as Ex. 21-A Hunt's signed Miranda form which listed his birth date; he was 41 years old at the time of the offense. The state also offered the edited tape recording of his statement in which he admitted giving, if not selling, a syringe prepared with crystal methamphetamine to Beverly Phillips. Ms. Phillips testified she was 17 years old at the time of the offense, that she knew the experience of shooting methamphetamine and that she had pled guilty to simple possession of methamphetamine. On direct examination she referred to the drug Hunt gave her that day as methamphetamine or crystal, and said she "understood" that this was what Hunt was giving her. On cross examination she said she was not positively sure whether it was methamphetamine or really amphetamine; she did not know the difference.
This evidence easily satisfies the first element of the crime, the age requirements. As for the second element, Ms. Phillips's fairly strong identification of the substance on direct examination offsets her later equivocation on cross, elicited in response to leading questions. Viewed in the favorable light of Hunt's direct admission that he gave her crystal methamphetamine, and the fact that this drug was found at the scene, the evidence satisfies the second element and is sufficient to convince a rational trier of fact beyond a reasonable doubt that Hunt committed this offense.
The other two offenses of which Hunt was convicted were possession, with intent to distribute, of (1) methamphetamine and amphetamine, both Schedule II CDS, and (2) marijuana, a Schedule I CDS. R.S. 40:967, :966. The conjunctive billing in the first count is permissible under LSA-C. Cr.P. art. 480; proof of one of the several acts will support the conviction. In cases where the intent to distribute CDS is an issue, court may look to various facts:

*1108 (1) whether the defendant ever actually distributed or attempted to distribute the drug;
(2) whether the drug was in a form usually associated with possession for distribution to others;
(3) whether the amount was such as to create a presumption of an intent to distribute;
(4) expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only;
(5) any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
See State v. House, 325 So.2d 222 (La. 1975); State v. Coleman, 552 So.2d 513 (La.App. 2d Cir.1989), writ denied 559 So.2d 138 (La.1990).
The critical and, ultimately, dispositive evidence of intent to distribute was Hunt's own admission in his recorded statement, Exhibit S-21, that he was weighing "dope, drugs * * * for sale." Sgt. Via further asked Hunt:
Q. For sale? Is that why you were possessing some of this marijuana and...
A. Yeah.
Q. ... uh, this methamphetamine, too?
A. Yes, sir.
Beverly Phillips also testified that Hunt gave her methamphetamine, a syringe and needle on the date of this offense. This is direct testimonial evidence of intent to distribute and an incident of actual distribution.
As if more evidence were needed, police seized nine separate packets of marijuana totalling nine ounces from Hunt's house; scales for weighing drugs; syringes and baggies; chemicals (lidocaine) and apparatus associated with the manufacture of methamphetamine; the account book, reasonably viewed as a record of drug sales; an unusually large amount of cash; an arsenal of weapons and a munitions factory, reasonably associated with the defense of a lucrative drug business.
Admittedly only a small amount of methamphetamine was actually seized. Some people in South Monroe might keep over $1,800 cash in their houses. If Hunt were not a felon, he might say the two rifles and four shotguns, and perhaps even the five pistols, were the modest trappings of an avid sportsman. And Hunt might even have prepared nine individual packs of marijuana for convenient, personal use. But these facts do not stand alone. They do not undermine the contrary direct testimony and overwhelming weight of the circumstantial evidence.
The totality of the evidence, viewed in light most favorable to the prosecution, is adequate to convince a rational trier of fact beyond a reasonable doubt that Hunt possessed methamphetamine and marijuana with the intent to distribute. This assignment does not present reversible error.

Excessive sentence
By his remaining assignments of error, Hunt urges that his individual sentences are excessive and should not have been made consecutive. After the CDS trial, Judge Joyce sentenced Hunt to consecutive sentences of 10, 10 and 20 years at hard labor. After the guilty plea to the firearms charge, Judge Harrison sentenced Hunt to 10 years at hard labor but made it concurrent with the other sentences. In brief the defense contends that both sentencing judges overlooked significant mitigating factors such as Hunt's status as a father, his honorable military discharge and the relatively small amount of CDS seized; and urges that if the judges had assigned proper weight to these facts, they would not have imposed maximum sentences and Judge Joyce would not have ordered three of them to be consecutive. The state urges in brief that only one of the sentences was actually the maximum.
Both sides' assertions need correction. The sentence Hunt drew on Count 1, ten years at hard labor for possession of methamphetamine and amphetamine with intent to distribute, was indeed the maximum sentence. LSA-Acts 1989, No. 369, effective September 9, 1989, moved these *1109 two stimulants from subsection 967 B(4) (maximum of 10 years at hard labor) to subsection 967 B(1) (maximum of 30 years at hard labor). Hunt's arrest was on June 15, 1988, before this amendment took effect; the prior law governs the sentence. State v. Hopkins, 367 So.2d 346 (La.1979); State v. Gros, 205 La. 935, 18 So.2d 507 (1944), cert. denied 326 U.S. 766, 66 S.Ct. 170, 90 L.Ed. 462 (1945). The sentence Hunt drew on Count 2, ten years at hard labor for possession of marijuana with intent to distribute, is not the maximum; the maximum is 30 years, and there is a minimum of five, at hard labor. R.S. 40:966 B(2). The sentence he drew on original Count 3, ten years at hard labor for illegal possession of a firearm by a felon, is maximum time but is actually illegally lenient as it did not deny the benefit of probation, parole or suspension of sentence and no fine was imposed. R.S. 14:95.1 B; State v. Brooks, 496 So.2d 1208 (La.App. 5th Cir. 1986). The state has not contested this sentence and we will not disturb it. The sentence he drew on original Count 4, 20 years at hard labor for distribution of methamphetamine to a minor who was at least three years his junior, was indeed maximum time; this offense occurred before the amendment cited above took effect. While R.S. 40:967 B(4) set a maximum of 10 years at hard labor, R.S. 40:981 C authorized a doubling of the maximum.
The test of excessiveness is two-tiered. First the record must show the sentencing judge considered the mandatory sentencing guidelines of LSA-C.Cr.P. art. 894.1. The judge is not required to list every aggravating and mitigating factor as long as the record shows he adequately considered them. State v. Smith, 433 So.2d 688 (La.1983). The goal of art. 894.1 is not a rote recital of factors but the enunciation of a factual basis for sentence; an adequate basis will obviate the need for remand even in the absence of full compliance with the article. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied 521 So.2d 1143 (La.1988).
The second tier is constitutional excessiveness. A sentence violates LSA-Const. Art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, the sentence shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). As long as he stays within the statutory limits, a sentencing judge has wide discretion in imposing sentence. Only a manifest abuse of discretion is grounds for reversal. State v. Lanclos, supra; State v. Hudgins, supra.
By his sixth and seventh assignments, Hunt contests the 10 years at hard labor he received for illegal possession of a firearm by a felon. Judge Harrison's sentencing colloquy was thoughtful and complete. He mentioned all the important elements and detailed Hunt's extensive criminal record, ultimately finding a "deep" involvement in drugs and distribution. The sentence is for the maximum time, and yet it is illegally lenient and was made concurrent with the other sentences. The claims of noncompliance and excessiveness as to this sentence are without merit.
By his first and second assignments, Hunt contests the sentences on the CDS charges. Judge Joyce prepared and filed in the record written "Sentencing Considerations" which covered the relevant factors. R.p. 127; see State v. Baldwin, 448 So.2d 834 (La.App. 2d Cir.1984). In open court he reiterated that Hunt had a high school diploma and an honorable discharge from the U.S. Air Force; these were mitigating factors. In brief the defense urges that Hunt is a father but there is nothing in the record to show that his child is dependent or that jailing Hunt *1110 would work undue hardship on the child. At age 42 (actually 41 at the time of the offense) Hunt was not a youthful offender; he had long involvement in the criminal justice system and continues to engage in crime; he has a problem with both alcohol and CDS; and, most damning, he was distributing drugs to the youth of the community.
A review of the PSI, which Judge Joyce ordered and read, supports his assessment of Hunt's criminal record. This report shows 18 arrests between 1965 and 1988. His misdemeanor record includes convictions in 1969 for misdemeanor theft; in 1978 for drunk and disorderly conduct; another in 1978 for negligent operation of a motor vehicle, reduced from DWI; in 1985 for simple criminal damage to property; and in 1986 for using loud and profane language. His felony record included a 1976 conviction in Texas for aggravated assault with serious bodily injury, for which he drew a seven-year suspended sentence and supervised probation; and a 1981 Ouachita Parish conviction for cultivation of marijuana, for which he drew three years at hard labor. In conjunction with the latter offense he was also charged with attempted murder of a police officer and resisting arrest, but these charges were nol prossed. The instant offenses were his third felony. Judge Joyce was justified in characterizing Hunt's record as one of continued crime.
The PSI further showed that Hunt had been selling drugs since 1965. In a portion of his interview not played to the jury, Hunt admitted selling marijuana and methamphetamines for the last two years; this would have begun shortly after his release from prison on the previous CDS charge. The photos in evidence graphically show that his house was an active center for cooking, packaging and distributing drugs. The arsenal of weapons and ammo, coupled with the past incident of shooting at an officer (who, according to Hunt, is now an assistant D.A.) conducting a CDS investigation, show a dangerous willingness to resort to firepower in defense of his "business." Hunt engaged in this business despite the advantage of a moderate-sized legacy (including about $60,000 in cash and the house on South 4th Street) from his mother. The sentences are severe, but given the gravity of the offenses and the character and attitude of the offender, they do not shock our sense of justice. The factual bases are adequate and the sentences are not excessive.
By his fifth assignment Hunt urges that his three CDS sentences should not have been made consecutive. Concurrent sentences are the general rule for multiple offenses arising from the same course of conduct. LSA-C.Cr.P. art. 883; State v. Williams, 445 So.2d 1171 (La. 1984). The sentencing judge may nevertheless, within his wide discretion, expressly direct consecutive sentences. Art. 883; State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied 521 So.2d 1168 (La. 1988). The court may consider all the art. 894.1 factors plus whether the defendant poses an unusual risk to public safety, in imposing consecutive sentences. State v. Sherer, 437 So.2d 276 (La.1983); State v. Lighten, 516 So.2d 1266 (La.App. 2d Cir. 1987).
The threat Hunt poses to public safety is documented by his criminal record and the facts of these offenses; despite prior probationary and correctional treatment he appears to persist in making and trading in drugs as a full-time vocation. His activity included giving drugs to at least one youthful person, and this conduct is singled out in the statute as especially serious. R.S. 40:981 C. Judge Joyce implicitly found a need for long correctional treatment. The effect, a 40-year sentence, is admittedly severe and presses the outer limits of the sentencing judge's discretion, and yet in these circumstances we cannot say it was an abuse of discretion. Hunt's long adherence to drug trading as a way of life and his violent propensities ultimately support the sentencing choice.
These assignments do not present reversible error.

Matters not formally appealed
Hunt has submitted a number of pro se filings to this court. Two of these, styled *1111 "brief" and "supplemental brief," purport to argue a wide variety of issues not addressed in his appointed attorney's brief. We will not consider these arguments because they were never assigned as errors. LSA-C.Cr.P. art. 844.
For Hunt's benefit, however, we would point out that the issue of ineffective assistance of counsel is generally a matter for post conviction relief, wherein a hearing and pertinent facts may be developed. LSA-C.Cr.P. arts. 924, 930; State v. Prudholm, 446 So.2d 729 (La.1984); State v. Seay, 521 So.2d 1206 (La.App. 2d Cir.1988). Needless to say, Hunt's allegations of ineffective assistance are not supported on the instant record.
Hunt's other major pro se issue concerns the forfeiture of his real property, mobile home, truck, savings accounts and other property. The forfeiture of property, including money, that is used in the course of, intended for use in the course of, derived from, or realized through drug racketeering activity, is a civil matter. LSA-R.S. 15:1352 et seq.; see also State v. Manuel, 426 So.2d 140 (La.1983) (applying a different forfeiture statute). The matter should be resolved in the separate civil proceeding; at any rate, the instant record is not adequate for review of these claims.
We have reviewed the record for errors patent and find none. LSA-C.Cr.P. art. 920(2).
For the reasons expressed, Terrance Hunt's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Police also seized a how-to manual called Secrets of Methamphetamine from a file cabinet in the house. The book itself was not admitted in evidence but can be seen in the photo admitted as Exhibit S-63.