604 So.2d 600 (1992)
STATE of Louisiana, Plaintiff/Appellee,
v.
Clarence TUCKER, Defendant/Appellant.
No. 23902-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1992.
*604 Indigent Defender Office by Richard E. Hiller, Shreveport, for defendant/appellant.
Clarence Tucker, in pro. per.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Powell Layton and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for plaintiff/appellee.
Before MARVIN, NORRIS and STEWART, JJ.
NORRIS, Judge.
After a jury trial, appellant Clarence Tucker was found guilty of two counts of possession of marijuana with intent to distribute. La.R.S. 40:966 A(1). He was adjudicated an habitual offender and sentenced to 25 years at hard labor on each count, the sentences to be served concurrently.
Tucker appeals, urging six assignments of error. We find that the trial court erred in denying Tucker's motion to suppress evidence gathered on the second count. Accordingly, we reverse the conviction and sentence on that count and remand for further proceedings. However, we find no merit in appellant's assignments as to the first count. Tucker's conviction and sentence on count one are thus affirmed.

FACTS
In the early morning of February 28, 1990, Shreveport police stopped Clarence Tucker in connection with a reported attempted burglary. The ensuing search revealed a handgun, 26 rolled marijuana cigarettes, a number of small plastic bags, and considerable cash. Tucker was arrested for possession of a firearm by a convicted felon (La.R.S. 14:95.1) and possession of marijuana with intent to distribute (R.S. 40:966 A(1)). Tucker was released later that day, after having been given a "felony summons," due to crowded jail conditions. R.p. 70.
Tucker was stopped again on March 2, 1990 during a drug sweep, code-named "Operation Thor," conducted jointly by the Shreveport and State police departments. On this occasion, police seized a plastic bag containing 47 rolled marijuana cigarettes which Tucker had thrown away. He was arrested and charged with possession of marijuana with intent to distribute.
*605 A jury found Tucker guilty of two counts of possession with intent to distribute. Tucker was adjudicated a third felony offender on count one, and sentenced as such to 25 years at hard labor. He was sentenced on the second count to 25 years at hard labor, to be served concurrently with count one.
Tucker appeals, urging six assignments of error. The facts of the incidents leading to the two counts will be detailed as they apply to the individual assignments.

DISCUSSION
Tucker submitted pro se briefs in support of his appeal. However, Tucker is represented on appeal by an attorney who has filed and briefed assignments of error. Because Tucker is not entitled to be both represented and representative, his pro se arguments will not be considered. State v. Gene, 587 So.2d 18 (La.App.2d Cir.1991); State v. Hughes, 587 So.2d 31 (La.App.2d Cir.), writ denied 590 So.2d 1197 (1991).

Assignment # 1: Motion to Suppress
Tucker argues that the police did not have lawful grounds to detain or search him on either February 28 or March 2, and that the warrantless searches of his person were therefore unreasonable and in violation of his constitutional rights. U.S. Const., Fourth Amendment; La. Const. Art. 1, §§ 2, 13, and 16. He thus claims, in his first assignment, that the trial court erred by denying his motion to suppress the evidence seized during these searches.
Where a warrantless search has occurred, the State has the burden of showing that one of the exceptions to the warrant requirement is applicable. State v. Roberds, 393 So.2d 715 (La.1981). A search pursuant to a lawful investigatory stop is such an exception. La.C.Cr.P. art. 215.1; Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In order to stop a person temporarily for an investigation, the officer must have a reasonable suspicion that the person has committed, is committing or is about to commit a crime. La.C.Cr.P. art. 215.1; Terry v. Ohio, supra. "Reasonable suspicion" is something less than the probable cause required for an arrest, but the detaining officer must be able to articulate specific reasons for his suspicion of criminal activity. State v. Rodriguez, 396 So.2d 1312 (La.1981); State v. Meyers, 520 So.2d 842 (La.App.2d Cir.1987). The officer must have had sufficient facts within his knowledge to justify an infringement of the suspect's rights. Mere suspicion of criminal activity is not sufficient for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).
In assessing the reasonableness of such a stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Flowers, 441 So.2d 707 (La. 1983), cert. denied 466 U.S. 945 (1984). The totality of the circumstances must be considered in determining whether reasonable cause exists. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
Once a police officer has made an investigatory stop, he may frisk the outer clothing of the person stopped; where the officer has reason to believe dangerous weapons may be present, he may search the person. La.C.Cr.P. art. 215.1.
Where officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized by police officers. If, however, property is abandoned without any prior unlawful intrusion into a citizen's right of freedom from governmental interference, then such property may be lawfully seized. State v. Andrishok, 434 So.2d 389 (La.1983).

February 28th Arrest
At the hearing on Tucker's motion to suppress evidence, Shreveport Police Officer Kenner testified that, shortly before 4:00 a.m. on February 28, 1990, he heard a *606 radio broadcast from police headquarters describing a burglary in progress at 4408 Ledbetter St. The broadcast stated that when the victim turned on the lights, she observed the black male who had been trying to break into her bedroom window flee toward his motorcycle parked on Ledbetter. Kenner, who was only a block or two away, responded immediately to the call. As Kenner approached the scene, Officer Phillips radioed to him that he was already proceeding down Ledbetter and had spotted two men standing in the street next to a motorcycle. Kenner turned onto Ledbetter from the opposite direction as Phillips, and also observed the two men. Kenner then approached the men with his headlights on.
Kenner testified that "there were no other people in that area at that particular time, there was no other motorcycle, and we arrived at the scene within minutes." R.p. 201. It is clear that, at this point, Kenner had reasonable grounds to make an investigatory stop and talk to these two men: both answered the general description given by the victim, and were standing virtually across the street from the victim's home and next to the motorcycle she mentioned when she called the police only minutes before. See State v. Bolden, 380 So.2d 40 (La.1980); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990).
Kenner further testified that, as he drew closer to the two subjects, he recognized one of them as Clarence Tucker. Kenner stated that he had known Tucker for years; recently he investigated a complaint of unauthorized use of a vehicle involving Tucker, checked his record and learned not only that Tucker had prior burglary convictions, but also that he habitually carried weapons. Kenner saw a bulge in Tucker's coat pocket, thought it looked like a weapon, and concluded that a pat-down search for weapons was necessary for his own safety. He then asked Tucker to place his hands on the motorcycle.
Under these facts Kenner had sufficient basis to reasonably suspect that Tucker had committed a crime and to reasonably believe his safety was threatened; he was therefore entitled to conduct a pat-down search for weapons. C.Cr.P. art. 215.1; Terry v. Ohio, supra; State v. Hunter, 375 So.2d 99 (La.1979); State v. Bolden, supra. This initial search revealed a .25 caliber handgun.
At the hearing, Kenner stated his understanding that Tucker was known to carry more than one weapon. He thus continued his pat-down search, finding a flashlight, a single-edged razor blade, approximately $180 in cash, a plastic bag containing 26 hand-rolled cigarettes (which he believed to be marijuana), and a quantity of very small empty plastic bags.
We find that Kenner's continued search after finding the handgun was justified, particularly in light of the burglary report and the advanced hour. Moreover, Kenner's discovery of the weapon gave him probable cause to arrest Tucker for possession of a handgun by a convicted felon. After the arrest, the other items seized from Tucker, including the 26 marijuana cigarettes, would have been found inevitably during the search incident to arrest. See State v. Sanchez, 516 So.2d 415 (La.App. 1st Cir.1987), writ denied 523 So.2d 1334 (1988).
Kenner's search was reasonable, based on articulable suspicions linking Tucker to a reported crime and on the officer's own personal knowledge of the suspect. The evidence seized during this search was properly admitted at trial. See Terry v. Ohio, supra. The trial court did not err by denying Tucker's motion to suppress the items seized from his person during the February 28 incident.

March 2nd Arrest
On March 2, police targeted the area surrounding Roby's Arcade, where they had been informed drug sales were taking place. Shreveport Police Officer Wilson and State Police Officer Jackson, in one of the lead vehicles, approached the Arcade with headlights off at approximately 10:30 p.m. Officer Wilson stated that he observed two black men standing huddled together by a car parked outside the Arcade; he testified at the suppression hearing *607 that the scene met the general appearance of what "might have been" a drug transaction.
As soon as the men noticed the approaching police cars, they quickly broke apart and began to walk away. Pursuant to department policy, Wilson immediately ordered the men to "halt" and to "prone out," meaning lie on the ground with arms and legs spread. One of the men complied immediately. Although the testimony is unclear, it appears that as Wilson leaped out of his car and shouted orders, the other suspect (who was later identified as Clarence Tucker) moved several steps toward the Arcade and tossed a plastic bag toward the rear of the building. Tucker then lay down on the ground as instructed.
Wilson instructed another officer to retrieve the bag Tucker had thrown; this bag contained 47 hand-rolled cigarettes which were later determined to be marijuana. Wilson then arrested Tucker for possession of marijuana with intent to distribute.
In California v. Hodari D., ___ U.S. ___, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the court held that no seizure occurs for Fourth Amendment purposes until the suspect is either physically seized or submits to the officer's "show of authority." In that case, evidence discarded by the defendant prior to his actual, physical seizure was abandoned and, therefore, admissible against him at trial. A plain application of Hodari D. to this case would dictate that the evidence seized is also admissible, since Tucker threw the plastic bag away before he complied with Officer Wilson's order to "halt" and "prone out" and thus submitted to the officer's "show of authority."
Louisiana's Constitution, however, does not duplicate the Fourth Amendment. Article 1, § 5 creates a right to be secure in all property and communications, in addition to the "persons, houses, papers, and effects" stated in the Fourth Amendment. Moreover, the state constitution extends this protection to all "invasions of privacy," a general concept broader than the "unreasonable searches and seizures" proscribed by the federal bill of rights. In light of this well-chosen language, the Louisiana Supreme Court has held that our constitution represents a conscious choice by our citizens to grant a "higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution." State v. Hernandez, 410 So.2d 1381, 1385 (La.1982), cited in State v. Church, 538 So.2d 993, 996 (La.1989). In reaching this conclusion, the Hernandez court expressed this view:
We, of course, give careful consideration to the United States Supreme Court interpretations of relevant provisions of the federal constitution, but we cannot and should not allow those decisions to replace our independent judgment in construing the constitution adopted by the people of Louisiana. 410 So.2d at 1385.
In Louisiana, when a citizen is either actually stopped without reasonable cause, or when a stop without reasonable cause is imminent, the "`right to be left alone' is violated, thereby rendering unlawful any resultant seizure of abandoned property." State v. Belton, 441 So.2d at 1199 and citations therein. Our supreme court stated in Church, a roadblock case, that since the defendant was not stopped based on any violation of the law, nor did the officers have a reasonable suspicion that he had committed, was about to commit, or was engaged in a violation of the law, the evidence of intoxication obtained during the stop was inadmissible. 538 So.2d at 997. Against this background of Louisiana constitutional law, we must determine the extent to which Hodari D. affects our analysis of the instant case.
The Louisiana Supreme Court has only summarily addressed this issue. In State v. Guilyot, 584 So.2d 1145 (La.1991), the Supreme Court reversed the conviction in an unpublished case and directed the court of appeal to "to reconsider its opinion in view of California v. Hodari[.]" We are not persuaded that this writ grant should be interpreted as summarily disposing of the long-recognized distinction between the rights granted under the federal and Louisiana constitutions, but rather as an instruction to the appellate court to address *608 the effect, if any, of Hodari D. on that distinction.
No single pattern is discernible from the post-Hodari D. decisions in our sister circuits. Although many decisions make no mention of the different state and federal standards,[1] others continue to recognize the distinction.[2]
Notably, shortly after Hodari D. was decided, the Fourth Circuit concluded, without citing the federal decision but relying on Hernandez, supra and Church, supra, that if a Louisiana defendant's
right to privacy has been invaded, without regard to whether physical force has been applied to the person or whether the person has submitted to a show of authority, then the State must show that the officers had probable cause or reasonable suspicion to do so, depending on whether an arrest or merely an investigatory stop has occurred. State v. Patterson, 588 So.2d 392, 395-6 (La.App. 4th Cir.1991) (emphasis added).
After due consideration of the experience of our sister circuits with this issue, and in the absence of an unequivocal instruction from the Louisiana Supreme Court, we are constrained to find that the analysis and law cited in Patterson is still valid. Under the Louisiana Constitution, a seizure occurs when an officer displays a show of authority which would cause a reasonable person to believe that detention is imminent, regardless of whether physical force has been applied to the person or whether he has submitted to a show of authority. See State v. Belton, supra, and citations therein.
According to Officer Wilson's testimony, Tucker threw the plastic bag as or immediately after he was ordered to halt and prone out. Tucker obviously disposed of the bag in response to the officers' approach and command, since he did so either after or simultaneously with Wilson's command. There can be little doubt that any reasonable person ordered to halt and hit the ground by one of many officers converging on an area would believe that detention was imminent. We therefore find that Clarence Tucker's "right to be left alone" was invaded when Officer Wilson shouted these orders. In order for the contraband abandoned after that command to be admissible as evidence against Tucker, the State must prove that the officers had reasonable cause to conduct this investigatory stop.
Wilson's testimony at the suppression hearing indicates that he initially relied on three primary factors in detaining Tucker and his companion at Roby's Arcade: 1) citizen complaints and police information that the area had a high incidence of drug trafficking; 2) the two suspects were huddled outside a parked car in a manner he felt "might have been" consistent with some type of drug transaction; and, 3) the suspects broke apart and began to walk away when they saw the police cars.
The reputation of an area is an articulable fact upon which an officer may legitimately rely in making an investigatory stop. United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); State v. Buckley, 426 So.2d 103 (La.1983). However, the mere presence of a group of individuals at a corner notorious for drug trafficking is not sufficient, by itself, to justify an investigative stop. State v. Fleming, 457 So.2d 1232 (La.App. 1st Cir.1984). The reputation of Roby's Arcade as an area notorious for drug trafficking was nevertheless an articulable factor on which Wilson could reasonably rely.
High crime areas are places in which the character of the area gives color *609 to conduct which might not otherwise arouse the suspicion of an officer. United States v. Garr, 461 F.2d 487 (5th Cir.), cert. denied 409 U.S. 880, 93 S.Ct. 209, 34 L.Ed.2d 135 (1972); State v. Buckley, supra. However, innocent activity even within a suspect area will not alone justify an investigative stop. State v. Belton, supra. Wilson stated that the two suspects' posture and manner was suggestive of a possible drug transaction, although he was unable to articulate specific facts or reasons for his conclusion. He did not see anything change hands between the two men.
Wilson further testified that the suspects broke apart quickly and began to walk away as soon as they spotted the police cars. Flight, nervousness or the startled appearance of an individual at the sight of a police officer is, by itself, insufficient to justify an investigatory stop. State v. Chopin, 372 So.2d 1222 (La.1979); State v. Truss, 317 So.2d 177 (La.1975). However, this type of conduct may be highly suspicious and therefore may be one of the factors leading to a finding of reasonable cause. State v. Belton, supra; State v. Williams, supra.
It is clear from the jurisprudence that none of the three factors on which Wilson relied to stop these men would alone be sufficient to justify an investigatory stop. To determine if this stop was reasonable, we must balance the societal need for the stop against the considerable invasion of privacy suffered by an individual who is not only stopped for questioning, but summarily told to lie on the ground. See State v. Flowers, supra. We acknowledge that the officer made a judgment call based on his experience in police work, but we also note that one of Wilson's three articulated reasons for stopping the men was the reputation of the neighborhood, a factor which, however legitimate, did nothing to point a finger at these two men specifically. Also, Wilson did not enunciate anything strongly indicative of criminal activity in the men's conduct immediately before and after they spotted the police cars. Even though they were in an unfavorable environment, their conduct was susceptible to quite innocent explanations and did not rise to a level sufficient to create reasonable suspicion.
We thus find that, under the totality of the circumstances presented here, Officer Wilson did not have reasonable cause to detain Tucker and his companion when he gave the order to halt and prone out. Because the officer did not have reasonable grounds to stop Tucker when he did so, the evidence seized as a result of this stop is inadmissible. The judgment denying the motion to suppress this evidence is reversed. Accordingly, we reverse the conviction and sentence as to count two and remand for further proceedings.
The remaining assignments will be considered as to count one only.

Assignment #2: Motion for New Trial
In his second assignment, Tucker urges that the trial court erred in denying his motion for new trial, first because the evidence adduced at trial was insufficient to show he had the intent to distribute marijuana, and, second, because he was denied a fair trial since certain witnesses he wanted to testify on his behalf were not subpeonaed or were released.

Sufficiency of Evidence
La.C.Cr.P. art. 851(1) provides that the court shall grant the defendant a new trial on his motion when the verdict is contrary to the law and the evidence. Ordinarily there is no appeal from the trial court's refusal to grant a motion for new trial except for error of law. La.C.Cr.P. art. 858; State v. Seay, 521 So.2d 1206 (La.App.2d Cir.1988). On the motion for new trial, the trial court may assess only the weight of the evidence; the question of sufficiency of evidence should be raised by motion for post verdict judgment of acquittal. C.Cr.P. art. 821; State v. Seay, supra, and citations therein. However, since the thrust of the argument is sufficiency, a constitutional issue, we will treat it as though it had been properly framed under art. 821. Seay, supra, and citations therein.
The constitutional standard for sufficiency of evidence to support a conviction *610 is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984). The Jackson standard applies to all evidence, direct and circumstantial. State v. Wright, 445 So.2d 1198 (La.1984); State v. Hunt, 568 So.2d 1104 (La.App. 2d Cir.1990), writ granted in part with order/denied in part 573 So.2d 1130 (1991). Even so, because of the nature of circumstantial evidence and a statutory rule requiring it to exclude every reasonable hypothesis of innocence, the Jackson standard must be carefully observed and methodically implemented in cases that hinge on circumstantial evidence. La.R.S. 15:438; State v. Hunt, supra. Ultimately, all the evidence must meet the Jackson standard by convincing a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Wright, supra.
The essential elements of possession of marijuana with intent to distribute are: (1) the defendant knowingly or intentionally (2) possessed marijuana (3) with the intent to distribute.
Officer Kenner's unrebutted testimony established that a plastic bag containing 26 rolled marijuana cigarettes was found in Tucker's coat pocket. James Goebel, the forensic chemist who prepared the lab report, verified at trial that the substance seized was in fact marijuana. There is nothing to indicate that anyone other than Tucker had any opportunity to place the bag of cigarettes into his coat. As the drugs were actually found on Tucker's person, we conclude that it was reasonable for the jury to find beyond a reasonable doubt that Tucker knowingly possessed 26 marijuana cigarettes.
Jurisprudence has established several factors useful in determining whether circumstantial evidence is sufficient to prove an intent to distribute controlled dangerous substances. First, whether the defendant ever distributed or attempted to distribute any marijuana. Second, whether the marijuana was in a form usually associated with distribution to others. Next, whether the amount was such as to create a presumption of intent to distribute. Fourth, expert or other testimony that such an amount as found in the defendant's possession is consistent with personal use only. Last, whether there was filed in evidence any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Green, 508 So.2d 602 (La.App. 2d Cir.1987).
In the instant case, no evidence was presented tending to show that Tucker had actually sold or attempted to sell marijuana.
Officer Shannon, who was accepted as an expert witness in the field of street narcotics trade, testified that when users buy marijuana in the total quantity found on Tucker, they almost invariably purchase and keep the marijuana loose (to maintain its potency), and roll the cigarettes themselves as needed. Thus, Shannon's testimony tended to show that the 26 rolled cigarettes found on Tucker were in a form and quantity more consistent with distribution than personal use.
The amount seized, in and of itself, was insufficient to create a presumption of intent to distribute. See State v. Greenway, 422 So.2d 1146 (La.1982); State v. Coleman, 552 So.2d 513 (La.App. 2d Cir.1989), writ denied 559 So.2d 138 (1990). However, Officer Shannon testified that he had never encountered anyone carrying this many rolled cigarettes strictly for personal consumption.[3] Nor does the record show that the amount of marijuana found in his possession was consistent with personal use only.
Goebel, the forensic chemist, testified that the "numerous" tiny plastic bags seized from Tucker are usually used to *611 distribute small rocks of crack cocaine, but that "you could put anything in them you want." R.p. 249.
Thus, expert testimony established that the marijuana found on Tucker was of a quantity normally inconsistent with personal use only and packaged in a manner consistent with distribution. In addition, Tucker was carrying a handgun, drug paraphernalia (baggies), as well as a significant amount of cash, and was stopped in the early morning hours. Officer Shannon further testified that the area in which Tucker was arrested was known for heavy drug trafficking. R.p. 258. These factors support the inference of intent to distribute. See State v. Hunt, supra; State v. Myre, 502 So.2d 1105 (La.App. 4th Cir.1987). The instant case is thus distinguishable from cases where intent was inappropriately inferred merely from the defendant's possession of contraband and testimony tending to establish that the form of the contraband was consistent with distribution. See and compare State v. Green, 524 So.2d 927 (La.App. 2d Cir.1988); State v. Green, 508 So.2d 602, supra.
Considering all of the factors enumerated above, we find that there was sufficient evidence to allow a reasonable trier of fact to conclude beyond a reasonable doubt that Clarence Tucker intended to distribute the marijuana found in his possession. There is no merit to this part of Tucker's second assignment.

Failure to Subpoena and Call Witnesses
Tucker further urges in his second assignment that the trial court erred in denying his motion for new trial because defense counsel at trial either refused to subpoena or excused certain witnesses the defendant believed would benefit his case.
We first observe that Tucker's motion does not specify which ground under C.Cr.P. art. 851 would support his argument that a new trial should have been granted. He claims no prejudice resulting from the trial court's ruling on a written motion or objection made during the proceedings, no new and material evidence which might have changed the jury's verdict, or any other prejudicial error or defect in the proceedings discovered after the verdict was handed down. See C.Cr.P. art 851(2)-(4). The only remaining ground possible under the article is where the trial court is of the opinion that the ends of justice would be served by the granting of a new trial. Art. 851(5). However, a denial of a motion for new trial based on this ground is not subject to review on appeal. State v. Spears, 504 So.2d 974 (La.App. 1st Cir.), writ denied 507 So.2d 225 (1987) and citations therein.
Instead, Tucker's claim appears to be one of ineffective assistance of counsel. The election to call or not to call a particular witness, however, is a matter of trial strategy and not per se evidence of ineffective assistance. State v. Seay, supra. Moreover, only Tucker himself testified at the hearing on the motion for new trial; his trial counsel was not called. This record is insufficient for us to make an intelligent review of the issue of ineffective assistance of counsel. Tucker's remedy is therefore post conviction relief where the quality of the attorney's performance can be fully developed and explored. State v. Seay, supra, and citation therein. We thus find no merit in this latter part of Tucker's second assignment.

Assignments # 3 and 4: Habitual Offender Adjudication
By his third assignment, Tucker claims that the trial court erred in denying his motion to quash the State's multiple offender bill and in adjudicating him a third felony offender. His fourth assignment urges that the court erred in sentencing him as a third felony offender.
The State's third and fourth felony offender bill shows Tucker's predicate offenses as attempted simple burglary and simple burglary. Tucker pled guilty to the attempted simple burglary charge on October 6, 1978, and was sentenced on October 19 to serve 18 months at hard labor. He was paroled January 8, 1980 and discharged from parole on April 19, 1980.
*612 Tucker's second felony conviction, for simple burglary, was entered March 2, 1982; he was sentenced on May 26, 1982 to serve ten years at hard labor. He was discharged from Wade Correctional Center on July 15, 1988.
The third and fourth offenses listed in the multiple offender bill were the instant possession with intent charges. At the habitual offender hearing, the State orally amended the bill to charge only a third felony offense as to the first count. The trial court then held that Tucker was a third felony offender, based on the two predicate burglary offenses and the instant possession with intent conviction arising out of the February 28 incident.
Tucker first claims that the adjudication was inappropriate because he was not properly Boykinized when he pled guilty to the 1978 attempted burglary charge. The trial court in the instant case specifically found from its review of the 1978 transcript that that proceeding did in fact conform to the mandates of Boykin v. Alabama, and that "it appears that the defendant understood his rights and waived his rights in connection with this plea of guilty." R.p. 391. Tucker did not designate the 1978 transcript in the record on appeal. La.C.Cr.P. art. 914.1 A. Nothing in the record before us in any way undermines the trial court's conclusion that Tucker did understand his rights when he entered his guilty plea. We thus find no merit in this aspect of the assignment.
Tucker's second contention is based on La.R.S. 15:529.1, which states in pertinent part:
C. This section shall not be applicable in cases where more than five years have elapsed since the expiration of the maximum sentence or sentences, of the previous conviction, or convictions, and the time of the commission of the last felony for which he has been convicted. In computing the period of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said five year periods.
Thus, where a defendant is sentenced as a third offender, no more than five years can have elapsed between the first and second felony convictions and between the second and third convictions excluding time served, although more than five years may have elapsed between the first and third convictions. State v. Porter, 533 So.2d 112 (La.App. 4th Cir.1988). Furthermore, with respect to a prior felony conviction, the date of discharge from parole is equated with the expiration of the maximum sentence. State v. Vincent, 387 So.2d 1097 (La.1980).
The presentence investigation report prepared in this case shows that less than one year elapsed between Tucker's discharge from parole on his first felony offense (April 19, 1980) and his arrest for the second felony offense (April 15, 1981). Tucker was convicted of this second offense on May 26, 1982 and sentenced to ten years at hard labor. The instant offense was committed on February 28, 1990, a little over one and one-half years after he was discharged from custody on July 15, 1988.
Tucker was well short of meeting the five-year requirement and was properly adjudicated and sentenced as a third felony offender. These assignments are without merit.

Assignment # 5: Excessive Sentence
Tucker's fifth assignment contests his sentences as excessive. As we reverse his conviction and sentence on the second count, we will only consider the sentence on the first count, 25 years at hard labor as a third felony offender.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The important elements which should be considered are the defendant's personal history (age, family *613 ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Mims, 550 So.2d 760 (La. App.2d Cir.1989).
Whether the sentence is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Richardson, 545 So.2d 714 (La.App. 2d Cir. 1989). A trial court has wide discretion to sentence within statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Madison, 535 So.2d 1024 (La. App.2d Cir.1988).
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App.2d Cir.), writ denied 452 So.2d 695 (1984). For sentencing purposes, a trial court may properly consider a defendant's attitude and criminal propensities. State v. Palmer, supra.
The maximum sentence for a first felony offender convicted of possession of marijuana with intent to distribute is 30 years at hard labor. La.R.S. 40:966 B. Adjudicated an habitual offender, Tucker's maximum possible exposure on this count was 60 years at hard labor, or twice the longest possible sentence prescribed for a first conviction. La.R.S. 15:529.1. This statute also provides that the minimum sentence for a third felony offender is two-thirds of the longest possible sentence for a first conviction, or in this case, 20 years. The 25 year hard labor sentence imposed by the trial court in this case is within statutory guidelines for a first felony offender, and close to the minimum possible sentence for a third felony offender. It does not shock our sense of justice.
Furthermore, the record reveals, and Tucker does not dispute, that the trial court followed the guidelines of La.C.Cr.P. art 894.1. The court addressed each of the aggravating and mitigating factors, and observed that Tucker's record "indicates a complete disregard" and "utter contempt" for the system. R.p. 411.
We note that the court, in its recitation of facts, stated that the Roby's Arcade incident took place on February 28 instead of March 2. We do not believe this error to be significant, as it was made very clear at the habitual offender hearing that the Ledbetter St. incident on February 28 was the enhanced charge, and because the court at the conclusion of the sentencing hearing unequivocally stated that the enhanced sentence was ordered on that first count.
This assignment is without merit.

Assignment # 6: Errors Patent
As urged in Tucker's sixth assignment, we have examined the record for errors patent and find none.

CONCLUSION
For the reasons expressed, we find that the trial court erred in denying Tucker's motion to suppress evidence seized on March 2, 1990 and introduced in support of the State's case on the second count of possession of marijuana with intent to distribute. As this evidence should not have been admitted at trial and was critical to the state's case, we reverse Tucker's conviction and sentence on count two and remand for further proceedings.
Finding no merit in Tucker's other assignments, we affirm his conviction, habitual offender adjudication and sentence on count one.
CONVICTION AND SENTENCE ON COUNT TWO REVERSED; CASE REMANDED.
*614 CONVICTION, HABITUAL OFFENDER ADJUDICATION AND SENTENCE ON COUNT ONE AFFIRMED.
NOTES
[1] See State v. Riley, 591 So.2d 1348 (La.App. 4th Cir.1991); State v. Green, 598 So.2d 624 (La. App. 3rd Cir.1992); State v. Morales, 583 So.2d 129 (La.App. 4th Cir.1991); State v. Pittman, 585 So.2d 591 (La.App. 5th Cir.), writ denied 586 So.2d 545 (1991); State v. Gray, 589 So.2d 1135 (La.App. 5th Cir.1991), writ denied 594 So.2d 1315 (1992); State v. Francise, 597 So.2d 28 (La.App. 1st Cir.1992); State v. Walker, 600 So.2d 911 (La.App. 4th Cir.1992).
[2] See State v. Ganier, 591 So.2d 1328 (La.App. 4th Cir.1991); State v. Raiford, 600 So.2d 924 (La.App. 4th Cir.1992); State v. Williams, 596 So.2d 399 (La.App. 4th Cir.1992).
[3] Shannon testified that, as an undercover agent, he had been involved in more than 200 raids, and stated that the greatest number of cigarettes he and the agents he supervised had seized from someone possessing the drug for personal use only was four or five. R.p. 253.