520 So.2d 842 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
Eric C. MEYERS and Kenneth L. Schafer, Defendants-Appellants.
No. CR87-404.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1987.
*843 Thomas E. Guilbeau, Lafayette, for defendants-appellants.
Donald Landry, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before KNOLL and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
KING, Judge.
The sole issue presented is whether or not the trial court was correct in overruling the defendants' Motion to Suppress evidence obtained by the search of an automobile with a search warrant.
Eric Meyers and Kenneth Schafer (hereinafter defendants), were each charged with one count of possession with intent to distribute marijuana, in violation of LSA-R.S. 40:966(A). The marijuana was seized from the car occupied by defendants pursuant to a search warrant issued after a trained narcotics dog alerted an officer to the trunk of the car after it was stopped for a traffic violation. Defendants filed a Motion to Suppress the marijuana and, after a hearing, the motion was denied. Defendants thereafter each pled guilty to the charge reserving their right to appeal the denial of their Motion to Suppress. We affirm.

FACTS
On March 18, 1986, defendants, Eric Meyers and Ron Schafer, were occupants of a car on I-10 in Lafayette Parish, Louisiana. At 7:50 P.M., State Trooper John Leblanc clocked the car by radar traveling at 69 miles per hour and proceeded to stop the car for speeding. The driver, defendant, Eric Meyers, exited the car and was directed back to the Trooper's unit where he was given a speeding violation ticket. During the issuance of the ticket, Trooper Leblanc noticed that Meyers exhibited a high level of nervousness and perspiration that, in his opinion, exceeded the usual amount for an ordinary traffic stop. As Trooper Leblanc questioned Meyers about where he was coming from, he became evasive and did not know what to say. When asked what he had been doing Meyers froze up. Trooper Leblanc further observed the passenger in the car, defendant, Kenneth Schafer, turn around and look back several times during this short period. After running checks on Meyers' driver's license and the vehicle, Trooper Leblanc asked defendant, Kenneth Schafer, to step out of the car and identify himself. This was at 8:01 P.M. and Trooper Leblanc testified that he made this request, because of the number of looks the passenger directed at the Trooper's unit along with Meyers' apparent nervousness, leading him to believe that something was wrong. As Schafer stepped out of the vehicle, Trooper Leblanc saw that he wore a sport shirt with pockets at the bottom and noticed a large bulge in Schafer's lower right pocket. Trooper Leblanc, fearing that it might be a gun, called for back up assistance. At 8:11 P.M. two backup units arrived, one of which had a K-9 dog with the officer, and when Deputy Haydell alighted from his vehicle his dog came with him. At that time, Trooper Leblanc then asked Schafer what the bulge was in his pocket. Schafer replied, "money" and showed Leblanc a large roll of cash. By this time the dog had alerted to the trunk of the stopped vehicle, which indicated a strong possibility of narcotics therein. Schafer and Meyers then both refused the officers voluntary access to search the trunk of the car at which time the officers advised defendants *844 they were immobilizing the car and would seek a search warrant to search the car. At 8:25 P.M., Officer Leblanc contacted a narcotics officer to help him apply for a search warrant. Lieutenant John Bourque of the Lafayette Parish Sheriff's office and Trooper Leblanc both signed the affidavit for the search warrant which was then presented to a local magistrate who issued a search warrant. At 12:35 A.M., on March 19, 1986, a search was made of the car trunk and approximately three pounds of marijuana was discovered. These criminal charges then resulted.
Defense counsel filed many pre-trial motions, one of which was a Motion to Suppress the evidence which, after a hearing, was denied. Reserving their right to contest the ruling on the motion to suppress, under State v. Crosby, 338 So.2d 584 (La. 1976), the defendants pled guilty to the charges against them. This appeal followed.

LAW
Defendants' assignment of error from the trial court's denial of the Motion to Suppress actually encompasses two issues of law which are:
(1) Did the police officers who detained the defendants, after the traffic citation for speeding had been issued, have reasonable cause to hold defendants pursuant to an investigatory stop?
(2) Was the search warrant issued by the magistrate invalid because it was defective on its face and based on an untruthful affidavit?
Trooper Leblanc's authority for conducting this investigatory stop is based upon La.C.Cr.P. Article 215.1 which provides in part:
"A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or misdemeanor and may demand of him his name, address and an explanation of his actions."
In this case, Trooper Leblanc had probable cause to arrest defendant, Meyers, for the speeding violation; Trooper Leblanc decided against this and issued a ticket instead. In the course of the issuance of the ticket, Trooper Leblanc noticed several events that he felt were out of the ordinary in this traffic stop. Trooper Leblanc stated that Meyers was more nervous than normal; that he was evasive about where he was driving from or what he had been doing; that he was sweating excessively; and that the passenger in the car kept looking back at him. Trooper Leblanc, after finishing with the driver, asked defendant, Schafer, the passenger, to step out of the vehicle so that Leblanc could determine his identity and run a check on him to see if he was wanted.
An investigatory stop is recognized both under La.C.Cr.P. Article 215.1 and Federal jurisprudence. Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such a stop is based on reasonable cause, a somewhat lesser standard than probable cause. Reasonable cause to stop and question a suspect must be determined on a case by case basis; this is to be determined by the officer's ability to articulate specific reasons on which he bases his reasonable suspicion. State v. Rodriguez, 396 So.2d 1312 (La.1981).
In Terry v. Ohio, supra, the Supreme Court stated:
"Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that person with whom he is dealing may be armed and presently dangerous; where in course of investigating his behavior he identifies himself as policeman and makes reasonable inquiries; and where nothing in initial stages of encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled to conduct carefully limited search of outer clothing in attempt to discover weapons which might be used to assault him...." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, at page 1884, 20 L.Ed.2d 889 (1968).
*845 Terry set the stage for the numerous criminal cases that have since used it to support or defeat Fourth Amendment search and seizure rights. The officer in Terry was a veteran of 39 years and was observing two men that he suspected were casing out a store. On his experience and the actions of the two men, he approached the two and frisked Terry and found a .38 caliber revolver and arrested him on a concealed weapon charge. In supporting the lower court's denial of Terry's motion to suppress, the United States Supreme Court stated:
"And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or `hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, at page 1883, 20 L.Ed.2d 889 (1968).
Thus, Terry, supra, recognizes the officer's experience on the street and his observations of the activity at hand, in lieu of isolated independent articulable facts, to substantiate his reasonable suspicion and the ensuing stop and/or search and seizure.
In the case at bar, Trooper Leblanc had five years of active experience at the time of this traffic stop. While this court recognizes that five years experience cannot compare to the 39 years experience of the arresting officer in Terry, we do feel that a state trooper, assigned to Interstate Highway I-10 on Traffic Patrol Duty does become "experienced" sooner in making traffic stops than would an officer who does not routinely make such stops. Leblanc, as a Trooper First Class assigned exclusively to Traffic Patrol Duty on I-10, a busy corridor of interstate travel, made hundreds of traffic stops prior to this one, and hence his experience should be considered when he made reasonable inferences from the facts at hand. This court agrees with the rationale stated in Terry, supra, pertaining to an officer's experience to support his observations, as well as specific articulable facts, to substantiate reasonable suspicion for an investigatory stop.
In their brief, defendants argue that Trooper Leblanc did not have reasonable cause to suspect them of criminal activity. We disagree. Based upon the articulated facts that Trooper Leblanc stated at the hearing on the Motion to Suppress and the inferences he drew from these facts in light of his experience, we find that Trooper Leblanc met the minimum requirements under C.Cr.P. Art. 215.1 to have reasonable cause to request the passenger, defendant, Schafer to step out of the car and identify himself. Once the bulge in his pocket was noticed, and the trooper suspected it might be a weapon, he was justified in calling for a back up unit for his personal safety. At an investigatory stop, an officer may make a limited search of a suspect confined in scope to a search for weapons. State v. Bearden, 449 So.2d 1109 (La.App. 5 Cir. 1984), writ den., 452 So.2d 179 (La.1984).
In Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), a somewhat similar circumstance occurred and the court stated:
"While on routine patrol, two Philadelphia police officers observed respondent Harry Mimms driving an automobile with an expired license plate. The officers stopped the vehicle for the purpose of issuing a traffic summons. One of the officers approached and asked respondent to step out of the car and produce his owner's card and operator's license. Respondent alighted, whereupon the officer noticed a large bulge under respondent's sports jacket. Fearing that the bulge might be a weapon, the officer frisked respondent and discovered in his waistband a .38-caliber revolver loaded with five rounds of ammunition." Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, at page 331, 54 L.Ed.2d 331 (1977).
In reversing the the Pennsylvania Supreme Court's decision holding that the seized gun should be suppressed, the United States Supreme Court in Mimms, noted that the action of the officer was reasonable when "... the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action was appropriate." *846 Mimms, supra, 98 S.Ct. at page 334. The Supreme Court then went on to state:
"[T]here is little question the officer was justified. The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of `reasonable caution' would likely have conducted the `pat down.'" Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, at page 334, 54 L.Ed.2d 331 (1977).
See also State v. Roy, 496 So.2d 583 (La. App. 1 Cir.1986), writ den., 501 So.2d 228 (La.1987); State v. Hunter, 499 So.2d 383 (La.App. 4 Cir.1986).
In the case at bar, Trooper Leblanc decided for his own safety not to search defendant, Schafer, until back up assistance arrived. When that unit did arrive, that officer, not Trooper Leblanc, allowed the K-9 dog to run free and the dog soon alerted to the trunk of defendant's car indicating possible narcotics. Though not briefed, it is well recognized that such actions by a trained narcotics dog do not constitute a search. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).
At the time when the K-9 dog alerted to the trunk of the car, the officers then had probable cause to hold the car until a search warrant could be applied for.
Trooper Leblanc had probable cause to stop the vehicle for speeding. This probable cause existed for the duration of the traffic stop, however, prior to the end of this period of time, Trooper Leblanc's experience, observations and his reasonable inferences considered as a whole, as a totality of the circumstances, substantiated the minimum requirements of reasonable cause needed to initiate the investigatory stop of defendant, Schafer, which began after the traffic citation was issued. This court finds, as did the district court, that after Trooper Leblanc's order to defendant, Schafer, to step out of the car for a investigatory stop and he noticed the bulge in Schafer's pocket that he was justified in calling for back up assistance. For this reason we find that defendants' argument on the first issue of their assignment of error has no merit.
Defendants further argue that the search warrant issued was defective in that the information on the affidavit submitted for its issuance was false and, second, that the warrant did not particularize the object of the search. A review of the affidavit submitted for the search warrant shows that it clearly describes the car, the car's location and the the suspected contents therein, namely: "Illegal Narcotics, Monies, Paraphenlia [sic]".
Defendants argue that the information submitted in the affidavit was false because the affidavit stated that "Deputy Scotty Haydell with the St. Martin Parish Sheriff's Office K-9 Unit (drug dog) was working with Trooper Leblanc" and because it stated that "Trooper Leblanc stopped the vehicle at mile post 106 on I-10. Deputy Haydell assisted Trooper Leblanc." Defendants argue that these statements in the affidavit are false because Trooper Leblanc testified he was alone when he first stopped the car defendants were occupying and that Deputy Haydell never assisted Trooper Leblanc but was simply his back up assistance approximately twenty minutes after the initial stop of the defendants' car. Affidavits are to be construed in a nontechnical and common sense manner. State v. Lehnen, 403 So.2d 683 (La.1981). These alleged discrepancies in the wording of the affidavit are minor and were not made so as to mislead the magistrate signing the search warrant. Construing the wording of the affidavit and the facts of what actually happened in a nontechnical and common sense manner we, as did the trial court, find no false information in the affidavit.
Defendants further contend that the search warrant is defective because the search warrant itself did not particularize or describe the object or thing being sought. The search warrant itself states:
"That he had good reason to believe that on or in the (Premises) (Person) (Vehicle) located at *847 LAFAYETTE PARISH SHERIFF MAINTENANCE DIVISION 112 INDUSTRIAL PARKWAY LAFAYETTE, LA.
WITHIN THE PARISH OF LAFAYETTE, State of Louisiana as more fully described in the application for this warrant, there is now being concealed certain property namely,
1986 OLDSMOBILE, MAROON IN COLOR, TWO DOOR, BEARING WISCONSIN LICENSE NUMBER PC-8062
VIN. NUMBER 1G3NF27UOGC805451
VECH. REGISTERED TO: NATIONAL CAR RENTAL SYSTEMS, INC. STR/P.O. Box 35186 7700 FRANCE AVENUE SOUTH CITY MINNEAPOLIS, MN.
WHICH said property constitutes eveidence [sic] of the commission of a crime or offense against the Laws of the State of Louisiana set forth in the Louisiana Revised Statutes, and as I am satisfied from the affidavit(s) submitted in support of the application for this warrant that there is probable cause to believe that the aforesaid property is being concealed in the (Premises) (Person) (Vehicle) above described, and that the aforesaid grounds for the issuance of this search warrant exist;"
The wording shown above in all capitol letters was typed in on the printed form of the search warrant.
This court finds, as did the trial court, that this typed in wording on the warrant itself is insufficient to require suppression of the evidence obtained in the subsequent search of the trunk of the defendants' car as it was clear from the affidavit on which the search warrant was issued that the officers had probable cause to believe there were illegal drugs in the trunk of the defendants' car.
If the search warrant is read with the accompanying affidavit, the object or the thing sought, that is, illegal drugs, is specified. The car sought to be searched is clearly identified but its description was typed in the wrong portion of the printed search warrant. While this court does agree with the trial court, which noted that the search warrant had a discrepancy, we do not find that this invalidates the search. Courts want to encourage police officers to seek warrants, so doubtful or marginal cases will be decided in favor of upholding the warrant. State v. Huffman, 419 So.2d 458 (La.1982); State v. Weinberg, 364 So. 2d 964 (La.1978). There was no showing at the hearing of the motion to suppress evidence that there was any attempt on the part of the officers to mislead the magistrate. To the contrary, as noted by the trial judge, the evidence shows that there is no question but that the officers acted in good faith. As this Court said in State v. Martin, 487 So.2d 1295 (La.App. 3 Cir. 1986), writ den., 491 So.2d 25 (La.1986), in discussing the "good faith" exception to the exclusionary rule:
"In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court established the `good-faith' exception to the exclusionary rule. In that case, the search warrant was found to be defective because the affidavit upon which it was based failed to establish probable cause to search the named addresses. The Supreme Court reversed the trial court's partial grant of the defendants' motion to suppress evidence, gathered pursuant to the exception of the warrant, stating:
`In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.' United States v. Leon, 468 U.S. 897, at page 926, 104 S.Ct. 3405, at page 3422, 82 L.Ed.2d 677 (1984).
The court in Leon further stated that the exclusionary rule is designed to deter police misconduct rather than to punish the errors of prosecuting attorneys, magistrates and judges, and that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in the unusual cases in which exclusion of evidence will further *848 the original purpose of the exclusionary rule." State v. Martin, 487 So. 2d 1295, at page 1300 (La.App. 3 Cir. 1986), writ den., 491 So.2d 25 (La.1986).
Clearly this case fits under the good faith exception. United States v. Leon, supra; State v. Martin, supra. Suppression of the evidence in this case would not further the original purpose of the exclusionary rule. For this reason we find no merit to defendants' argument on this second issue of their assignment of error.
For the foregoing reasons, the ruling of the trial court denying the defendants' Motion to Suppress is affirmed.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.