687 So.2d 575 (1997)
STATE of Louisiana
v.
Melvin WASHINGTON.
No. CR96-656.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1997.
*577 Robert Richard Bryant, Jr., V. Ed McGuire, III, Lake Charles, for State.
John Lavern, Lake Charles, for Melvin Washington.
Before THIBODEAUX, PETERS and GREMILLION, JJ.
PETERS, Judge.
The defendant, Melvin Washington, was charged by bill of indictment with possession of large quantities of cocaine, a Schedule II drug as defined by La.R.S. 40:964(A)(4), in violation of La.R.S. 40:967(C) & (F)(1)(c). He was tried by a jury and found guilty of possession of cocaine in excess of four hundred grams. The state then filed a bill of information, charging the defendant as a third felony habitual offender. After a habitual offender hearing, the defendant was found to be a third felony offender and was sentenced to serve thirty years at hard labor without benefit of probation, parole, or suspension of sentence. The defendant has appealed his conviction and sentence.

DISCUSSION OF THE RECORD
On May 18, 1993, Deputy David Domingue and Deputy Ray Price of the Calcasieu Parish Sheriff's Office were working traffic enforcement detail along Interstate Highway 10 (I-10) within Calcasieu Parish. Deputy Domingue was operating a radar unit in one vehicle, and Deputy Price was in another vehicle, functioning as a backup unit. Deputy Price had a drug-detection dog in his unit.
At approximately 8:00 P.M., the defendant and a passenger were traveling east on I-10 in a 1985 Chevrolet S-10 Blazer and were clocked by Deputy Domingue's radar doing seventy-five miles per hour in a fifty-five-mile-per-hour zone. Deputy Domingue then stopped the defendant at approximately mile post twenty-three on I-10, and Deputy Price pulled over to aid in the stop.
Deputy Domingue testified that the defendant immediately jumped out of his vehicle and said, "Mississippi Narcotics, I'm on a deal." According to Deputy Domingue, this action and the defendant's demeanor in general were so unusual that he became fearful of the situation and immediately conducted a pat-down search of the defendant. He found the defendant's action to be particularly unusual because in his experience, undercover officers do not normally reveal themselves, even to fellow police officers. After the pat-down search, the defendant informed Deputy Domingue that he was working for the Woodville Police Department and requested that the officer call Jimmy Ray Reese of the Woodville Police Department for confirmation of that fact. The defendant could not produce a driver's license, and Deputy Domingue returned to his unit to conduct a name-inquiry search based upon the information supplied by the defendant. The search revealed that Washington had two prior felony convictions on his record.
While Deputy Domingue was running the check on Washington's identity, Deputy Price conducted an exterior search of the Blazer with his drug-detection dog. The dog alerted on the car near the front passenger door seam, and Deputy Price informed Deputy Domingue of the alert. Deputy Domingue then informed Washington of his Miranda rights; told him that they were going to search the Blazer; and asked him if there were any narcotics in the car. Deputy Domingue testified that the defendant's response was "Man, you know, you know" and "Man, don't do this to me, you know." According to Deputy Domingue, the defendant continued to claim that he was a narcotics agent. In his testimony, Deputy Price confirmed Domingue's recollection of the defendant's response except that he heard him say, "Hey, man, you know."
A nine-millimeter pistol was recovered from the interior of the Blazer, and the officers then proceeded to search the vehicle's hood area. As a result of this search, they found two cylinder-shaped objects wrapped in brown tape inside the breather hoses under the hood. Later analysis confirmed that these objects contained 421.11 grams of *578 crack cocaine having a street value of approximately $80,000.00. After the cocaine was found, Washington and his passenger[1] were placed under arrest and taken to the sheriff's maintenance shop where they were met by Detective David Green, an investigator with the Calcasieu Parish Sheriff's Office, Narcotics and Vice Divisions. The group then proceeded to the sheriff's office where the defendant was again advised of his Miranda rights and Detective Green, Deputy Domingue, and Deputy Price again questioned him concerning the cocaine found in the search. The officers testified that upon further questioning, the defendant admitted that he had acquired the cocaine in Houston from a Bob Womack and that he was driving it back to his sister's house in Crosby, Mississippi. He also stated that he was being followed by or was following two Jamaicans who were apparently responsible for assuring delivery of the cocaine.
Deputy Domingue testified that he contacted the Mississippi Bureau of Narcotics and the person he spoke with told him that the defendant was not working for them and that he did not even know the defendant. Domingue also called the Woodville Police Department and was informed that Jimmy Ray Reese was not the Chief of Police of Woodville, but of Centerville, Mississippi. Deputy Domingue then contacted Reese, who confirmed that he knew the defendant but stated that the defendant was not working for him. Reese also testified at trial. He testified that he had worked for the Mississippi Bureau of Narcotics from 1989 to 1990 and that they had attempted to use Washington as a confidential informant on occasion, but the defendant had not been able to produce. He further testified that he had not had any contact with Washington since 1990, and Washington was not working for him as a confidential informant in May 1993. At trial, the defendant testified that he was driving the Blazer and transporting the pistol back to Mississippi for someone named Kevin. In exchange for this service, Kevin was to supply him with some crack cocaine. He also testified that although the Blazer was registered to a Sharon Evans of Crosby, Mississippi, it actually belonged to his sister and Kevin. It was his testimony that he had no knowledge that there were any drugs in the vehicle; that he had lied to the deputies about being a narcotics officer because he was fearful of being found with the pistol in his possession; and that Jimmy Ray Reese had helped him out of difficulties in the past.
The jury returned a verdict of guilty of possession of cocaine in excess of four hundred grams. At the habitual offender hearing, it was determined that the defendant was the same individual who was convicted of burglary of an automobile in March 1987 and burglary of a dwelling house on October 27, 1988. Both of these prior offenses occurred in Mississippi and were found to be felonies under the laws of that state. The defendant was then found to be a habitual offender and was sentenced to serve thirty years at hard labor without benefit of probation, parole, or suspension of sentence.

OPINION
In his appeal, the defendant raises eight assignments of error. These assignments address alleged errors in the trial, the habitual offender proceedings, and the sentence. For the following reasons, we reject these assignments.
Assignment of Error Number One
By his first assignment of error, the defendant contends that the verdict was contrary to the law and the evidence. Specifically, he claims that the state failed to prove that he knew the drugs were in the Blazer. In order to convict the defendant of possession of over four hundred grams of cocaine, a violation of La.R.S. 40:967(C) & (F)(1)(c), the state was required to prove beyond a reasonable doubt that he had actual or constructive possession of cocaine weighing in excess of four hundred grams.
When the issue of the sufficiency of the evidence is raised on appeal, this court must decide whether, after viewing the evidence in the light most favorable to the prosecution, *579 any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). It is the trial court's role to weigh the respective credibilities of the witnesses, and this court should not second-guess those credibility determinations beyond the sufficiency evaluations under the Jackson standard of review. Graffagnino, 436 So.2d 559.
The defendant argues that he was merely the driver of the Blazer and was unaware of the presence of any drugs. He claims that his response to the officers' initial inquiry as to whether there were any drugs in the vehicle was "Man, I don't know." He also denied having said anything about receiving cocaine in Houston, Bob Womack, or the two Jamaicans. However, the jury was also presented with the testimony of three officers and the videotape of the actual traffic stop of the defendant. In the video, as soon as he exits the Blazer, Washington can clearly be heard saying that he is a Mississippi Narcotics agent and that he is on a deal. The audio on the tape is not clear as to what Washington's response was to whether or not he had drugs in the vehicle. However, both officers testified that his response was indicative to them that he had drugs in the vehicle. At trial, Deputy Domingue testified that the defendant told him that there were approximately sixteen "cookies" in the cylinder-shaped objects found under the hood of the Blazer.[2] Additionally, Deputy Green testified that he was also present when the defendant admitted buying the drugs in Houston from Womack, discussed the two Jamaicans, and related the planned delivery of the drugs to his sister's house in Mississippi.
When viewed in the light most favorable to the prosecution, a rational trier of fact could have easily concluded that the state proved beyond a reasonable doubt that the defendant was in actual or constructive possession of over four hundred grams of cocaine. We find that this assignment lacks merit.

Assignment of Error Number Two
By his second assignment of error, the defendant contends that the trial court erred in denying his motions to suppress certain statements and physical evidence. There are actually two motions to suppress filed. One was filed on April 13, 1994, wherein the defendant argues that the controlled dangerous substance seized should be suppressed. The other was filed on April 28, 1994, and contends that any statements or physical evidence seized should be suppressed. On June 1, 1994, a hearing was held and the trial court denied the defendant's motion to suppress. Because the defendant did not designate the transcript of this hearing to be included in the record on appeal, we do not know whether only one of the motions or both were denied by the trial court. The appellant is required to designate the necessary portions of the proceedings to be included in the record in light of the assignments of errors urged. La.Code Crim.P. art. 914.1. However, in determining the correctness of a ruling on a pre-trial motion to suppress, this court may consider all pertinent evidence adduced at the trial and not just the evidence presented at the hearing on the motion to suppress. State v. Vaughn, 378 So.2d 905 (La.1979).
The defendant contends that the fact that Deputy Domingue did not write him a speeding ticket and was being backed up by Deputy Price with a narcotics dog indicates that this stop was never intended to be a traffic stop but rather was a pretext for a narcotics investigation. Defendant also argues that "searching the interior of the vehicle based on nothing more than the dog's supposed alert to the presence of drugs clearly is insufficient to support the intrusive search which the defendant endured in this instance."
The first question to be determined is whether Deputy Domingue had reasonable cause to stop the defendant's vehicle.
An individual cannot be stopped in his automobile by a police officer, without a warrant, unless the officer had a reasonable *580 suspicion that the individual has committed, or is about to commit, a criminal offense, including the violation of a traffic regulation.
State v. Fisher, 94-603, p. 5 (La.App. 3 Cir. 11/2/94); 649 So.2d 604, 607, writ denied, 94-2930 (La.4/7/95); 652 So.2d 1344 (citations omitted). Deputy Domingue testified that he stopped the vehicle because his radar unit detected the vehicle traveling seventy-five miles per hour in a fifty-five-mile-per-hour zone, a violation of La.R.S. 32:64(A). This testimony is not disputed, and thus, we find that Deputy Domingue had reasonable cause to stop the defendant's vehicle.
The next question to be answered is whether Deputy Domingue had sufficient probable cause to detain the vehicle and subsequently search it. Unreasonable searches and seizures are prohibited by both the United States and Louisiana Constitutions. U.S. Const. amend. IV; La. Const. art. I, § 5. A warrantless search and seizure is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tatum, 466 So.2d 29 (La.1985). One such exception, the "automobile exception," has developed because of the time problems associated with obtaining a search warrant and the mobility of automobiles. This exception to the warrant requirement is based on probable cause and exigent circumstances which render it impractical to secure a search warrant and has been recognized by the United States Supreme Court in U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). In Ross, the Supreme Court held that when police officers have probable cause to believe that contraband is hidden somewhere within the vehicle, they may conduct a warrantless search of the vehicle that is as thorough as if they had the approval of a magistrate to search the vehicle. In determining whether a warrantless search is unreasonable, the Supreme Court has undertaken an objective assessment of an officer's action in light of the facts and circumstances known to him at the time. State v. Garcia, 519 So.2d 788 (La.App. 1 Cir.1987), writ denied sub nom, State v. Rodriguez, 530 So.2d 85 (La.1988).
In connection with a motion to suppress, the state bears the burden of proving the admissibility of evidence seized without a warrant. La.Code Crim.P. art. 703(D). La. Code Crim.P. art. 215.1(A) allows law enforcement officers to conduct an investigatory stop without a warrant or probable cause; the officer need only have a reasonable suspicion that the person has been, is, or is about to be engaged in criminal conduct. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). An investigatory stop is a form of "seizure," and although it is no lesser of a restriction on a person's freedom of movement than an arrest, it is considered a lesser intrusion because it is briefer than an arrest. State v. Cabanas, 594 So.2d 404 (La.App. 1 Cir.1991) [quoting State v. Vincelli, 555 So.2d 21, 24 (La.App. 1 Cir.1989)], writ denied, 598 So.2d 371 (La.1992). The determination as to whether reasonable cause exists to temporarily detain a person requires looking at the totality of the circumstances. Belton, 441 So.2d 1195.
In this case, the defendant's actions and statement as he exited the vehicle immediately raised Deputy Domingue's suspicions. His response to Deputy Domingue's questions concerning the presence of contraband added to the reasonableness of Deputy Domingue's suspicion that the defendant was engaged in criminal activity. Additionally, the canine unit arrived on the scene immediately as it was acting as backup for Deputy Domingue, and thus, there was no lengthy detention of the defendant while waiting for a canine unit to arrive.
Upon walking around the exterior of the car, the dog alerted on the front passenger side of the car. The action of the drug dog sniffing the car was not the equivalent of a "search" of the car within the meaning of the Fourth Amendment. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, the positive alert to the presence of narcotics provided probable cause to search the car. State v. Meyers, 520 So.2d 842 (La.App. 3 Cir.1987). Exigent circumstances existed to conduct a *581 warrantless search of the vehicle because it was a movable, the occupant had been alerted to the surveillance, and the vehicle could have been moved and evidence destroyed during the time spent seeking a warrant.
Viewing the circumstances objectively, the officers' actions were justified. The totality of the circumstancesdefendant's statement that he was a narcotics officer on a deal and the dog's positive alert on the car were sufficient to provide probable cause to justify the warrantless search of the car. We find no merit to this assignment of error.

Assignment of Error Number Three
By his third assignment of error, the defendant contends that the trial court erred in allowing Detective Ronald Lewis to testify as an expert in the area of narcotics investigation. He contends that this testimony was prejudicial, irrelevant, conclusory, and invaded the province of the jury as the finder of fact.
Detective Lewis is a lieutenant detective with the Lake Charles Police Department, Special Services division. He has been with the department for seventeen and one-half years, working that entire time in the area of narcotics investigations. The court recognized Lewis as an expert in the area of narcotics investigations. The state indicated that his testimony was to aid the jury in their understanding of how this type of drug operation is performed and the street value of the cocaine at issue in this case. La.Code Evid. art. 702 provides as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Detective Lewis testified as to the employment of confidential informants. He indicated that confidential informants usually do not reveal their true identity, even to other officers. They will allow themselves to be arrested and then wait for their supervisor to handle the details. A supervisor would not allow charges to be brought against someone acting as a confidential informant for him. Detective Lewis stated that he would not allow a confidential informant working for him to possess drugs unsupervised. Since the defendant in this case claimed that he was a confidential informant, this information should have aided the jury in their deliberations.
Detective Lewis also provided information concerning the street value and wholesale value of the cocaine seized in this case; explained how drug couriers are commonly used to transport drugs; described how cocaine is made into crack cocaine; and explained how crack is usually smoked in a straight-shooter. The defendant testified that when the officers thought that he was wildly waving his hands, he was actually throwing away a straight-shooter.
We find that Detective Lewis' testimony was relevant to this case and was helpful in enabling the jury to understand the evidence presented as well as to determine whether the defendant knowingly and intentionally possessed the cocaine. Detective Lewis' testimony merely assisted the jury in its determination; it did not give the jury an opinion as to the defendant's guilt or innocence. We find no merit to this assignment of error.

Assignment of Error Number Four
By this assignment of error, the defendant contends that the trial court erred in failing to advise him of his right to remain silent at the habitual offender hearing. Although the defendant failed to brief this assignment, and therefore, it would normally be considered as abandoned, Rule 2-12.4 of the Louisiana Rules of CourtUniform Rules of Louisiana Courts of Appeal, we have addressed this error under our errors patent discussion.

Assignment of Error Numbers Five and Six
By these assignments, the defendant contends that the trial court erred in adjudicating him a multiple offender without requiring a showing by the state that he was advised of his rights and properly "boykinized" during proceedings in the predicate offenses and in permitting the state to introduce the pen pack. The defendant contends that the pen pack was not properly authenticated.
*582 Defendant failed to raise these objections at his arraignment, before the habitual offender hearing, or at the habitual offender hearing. Although the state has the burden of proving any issue of fact, "[t]he presumption of regularity of judgment shall be sufficient to meet the original burden of proof." La.R.S. 15:529.1(D)(1)(b). Under this statute, if the defendant wishes to claim that any of the alleged convictions are invalid, then he must file a written response to the information and prove the invalidity by a preponderance of the evidence. If the defendant fails to challenge the validity of the prior convictions before sentence is imposed, he will not be allowed to raise such an attack. Id. Since the defendant, who failed to object at a time when the problem could have been easily solved, has an adequate remedy available through post-conviction relief, we will not allow him to raise this issue for the first time on appeal. We find no merit to these assignments.

Assignment of Error Numbers Seven and Eight
By his final assignments, the defendant contends that the trial court erred in imposing an excessive sentence and in failing to adequately articulate the reasons and factual basis for the sentence. La.Code Crim.P. art. 881.1(D) provides:
Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
The defendant failed to file a motion to reconsider his sentence, and this failure precludes him from raising any objection to his sentence on appeal. Accordingly, we find no merit to these assignments.

Errors Patent
The scope of review on appeal includes all errors designated in the assignment of errors and any error that is discoverable by merely inspecting the pleadings and proceedings. La.Code Crim.P. art. 920. Our review of this case reveals several potential errors patent.
In imposing sentence, the trial court is required to give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of his sentence. La.Code Crim.P. art. 880. The record indicates that the trial court failed to do this; however, resentencing is not required. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94); 640 So.2d 561, writ denied, 94-1455 (La.3/30/95); 651 So.2d 858. We will remand this case to the district court for the commitment and minute entry to be amended to reflect that the defendant is given credit for the time that he has already served.
At the time of sentencing, the trial court is required to inform the defendant that he has three years from the date that the judgment and sentence become final to seek post-conviction relief. La.Code Crim.P. art. 930.8(C). The record shows that the trial court also failed to do this. This defect does not have any bearing on whether the sentence is excessive, and therefore, it does not provide a ground to reverse the sentence or remand the case for resentencing. La.Code Crim.P. art. 921. Since the three-year prescriptive period does not commence running until the judgment is final, prescription has not yet begun to run. This defect may be cured by the district court sending written notice to the defendant informing him of the prescriptive period for post-conviction relief.
Although the right to remain silent is not specifically set forth in La.R.S. 15:529.1, the supreme court has held that this statute clearly recognizes the defendant's right to remain silent and have the state prove its case. State v. Johnson, 432 So.2d 815 (La. 1983), writ granted on other grounds, 438 So.2d 1113 (La.1983). The statute implicitly implies that the court shall advise the defendant of this right. Id.
The defendant was not informed of his right to remain silent at the July 28, 1994 hearing on the habitual offender bill of information. According to the state's testimony at this hearing, an arraignment was held on *583 July 13, 1994, at which time the defendant entered a denial to the habitual offender charges. Neither the minutes nor the transcript of that arraignment are in the record, and thus, we are unable to know whether the defendant was informed of his right to remain silent at that time. However, we conclude that even if the defendant were not informed of his right to remain silent at his arraignment, any error resulting from this failure is harmless.
This court has concluded that only harmless error results when a defendant remains silent throughout the proceeding and the state presents competent evidence to prove his identity. State v. Hodges, 94-898 (La.App. 3 Cir. 3/1/95); 651 So.2d 487. The defendant neither acknowledged his prior offenses nor admitted the truth of the allegations contained in the habitual offender bill of information whereas the state presented the court with competent evidence as to the defendant's identity and prior convictions. The state introduced a pen packet of the sentences that defendant had served for his two prior convictions. Deputy Shirley Green, an expert in fingerprint analysis, took the defendant's fingerprints in court, compared them with the fingerprints included within the pen packet, and concluded that they matched. Additionally, the state asked the court to take judicial notice of the defendant's testimony at his merit trial. The trial judge had also presided over defendant's merit trial where the defendant admitted that he had been previously convicted of two burglaries in Mississippi. In a multiple offender proceeding, the trial judge has the right to take judicial notice of any prior proceeding of the same case over which he presided. State v. Martin, 400 So.2d 1063 (La.1981).
We conclude that the state presented sufficient competent evidence to adjudicate the defendant a third offense habitual offender such that if the defendant were not advised of his rights, the omission was merely harmless error.

DISPOSITION
For the foregoing reasons, we affirm the defendant's conviction and sentence. The trial court is directed to amend the commitment and minute entry to reflect that the defendant has been given credit for time served. Additionally, the trial court is instructed to send written notice to the defendant within ten days of the rendition of this opinion to advise the defendant of the prescriptive period for post-conviction relief. The district court shall file written proof in the record to verify that the defendant received such notice.
AFFIRMED.
NOTES
[1] The passenger turned out to be a hitchhiker picked up earlier by the defendant. He was eventually released because it was determined that he had no connection to the criminal activity.
[2] Each of the cylinder-shaped objects contained approximately nine cookies of crack cocaine. Deputy Domingue testified that a cookie of crack cocaine is approximately one ounce.