h PETERS, J.,
dissenting.
I must respectfully disagree with the majority’s conclusion that the trial court did not err in failing to grant the defendant’s pretrial motion to suppress the marijuana seized in the January 14, 2000 search. In my opinion, the majority’s conclusion is based, not on the evidence presented, but on the trial court’s interpretation of Deputy Pittman’s thought process. Simply stated, although the state might well have been able to produce evidence to establish the necessary reasonable suspicion for Deputy Pittman’s actions, it failed to do so, and we cannot supply that reasonable suspicion based on speculation.
Both the United States and Louisiana Constitutions provide safeguards for our individual freedoms from governmental subjugation to unreasonable searches and seizures. Specifically, U.S. Const, amend. IV and La. Const, art. I, § 5 both require *67 the issuance of a search warrant based on probable cause before a person’s property may be searched, although the law does recognize the validity of warrantless searches in exceptional situations. The “automobile exception” recognized in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and expanded upon in United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), is one of those situations and is the exception relied upon by the state in this case. However, as pointed out by the majority, this exception must be “based on probable cause and exigent 1 ^circumstances.” State v. Washington, 96-656, p.8 (La.App. 3 Cir. 1/15/97), 687 So.2d 575, 580. Thus, although the automobile exception eliminates the need for a search warrant, it does not eviscerate the need for probable cause. In Ross, 456 U.S. at 808-09, 102 S.Ct. at 2164-65, the Supreme Court stated:
In short, the exception to the warrant requirement established in Carroll — the scope of which we consider in this case — applies only to searches of vehicles that are supported by probable cause. In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.
(Emphasis added) (footnote omitted).
Considering the Ross decision, we must first determine the specific facts in evidence and then consider whether these facts, standing alone, would have been sufficient to justify the issuance of a search warrant pursuant to La.Code Crim.P. art. 162.
The only evidence presented was the testimony of Deputy Pittman, who testified that he stopped the defendant’s vehicle after observing it “swerving from the shoulder and crossing the center line back and forth.” Deputy Pittman observed that when the defendant exited the vehicle his speech was so slurred it was “almost incoherent,” and he stated that he “could smell a strong alcoholic beverage smell upon [the defendant’s] breath.” According to Deputy Pittman, the defendant’s extreme intoxication prevented him from performing any field sobriety tests. There was no suggestion that Deputy Pittman suspected any source of the defendant’s intoxicated condition other than alcohol. Additionally, there is no evidence to establish reasonable suspicion in Deputy Pittman’s mind that contraband might be in the defendant’s vehicle. That being the case, Deputy Pittman did nothing more than use the fact of the defendant’s intoxication as a pretext to explore for contraband. While the operation of a motor vehicle while intoxicated is a crime pursuant to l3La.R.S. 14:98, the mere possession of alcohol is not. Therefore, whether the defendant’s vehicle contained alcohol or not was of no import to the investigation for driving while intoxicated.
The trial court recognized the complete lack of evidence of reasonable suspicion for the deputy’s actions but attempted to supply the justification despite this lack of evidence. After completion of the evidence at trial and during argument of counsel, the trial court made the following statement:
Let my ask you a hypothetical. I[f] the officer determined, at least in his mind even [though] he is not, even though he testified he was not going to arrest the ... that the subject was under the influence of some substance. Doesn’t that perhaps give rise to, you know, I want to find out what this substance is?
(Emphasis added.)
I have no doubt that, if presented with an affidavit from Deputy Pittman reciting *68 only the above stated facts, a judge would find the facts woefully inadequate to issue a search warrant to search for contraband. With respect, I find that, in concluding otherwise, the majority has followed the trial court’s error in supplying evidence not contained in the record concerning Deputy Pittman’s thought process. Despite the trial court’s statement that Deputy Pittman questioned the source of the defendant’s intoxication (alcohol or controlled dangerous substance), there is no evidence in the record to substantiate that speculation on the part of the trial court. In fact, all of the evidence points to the conclusion that Deputy Pittman found the defendant's intoxicated condition to be nothing other than alcohol.
Given the evidence available and without reference to the trial court’s speculation concerning what Deputy Pittman might have been thinking, I find that the defendant’s continued detention for the use of the drug dog had no reasonable |4suspicion basis what so ever. In that regard, I find the majority’s reliance on State v. Lopez, 00-0562 (La.10/30/00), 772 So.2d 90, to be misplaced. In that case, Lopez was stopped for a traffic violation on 1-10 near Sulphur, Louisiana. The state trooper who stopped Lopez testified that Lopez’s responses to his questions concerning where he had come from and his destination conflicted with a response elicited from his passenger and that he was “ ‘extremely nervous, failed to make eye contact, hands shaking, just extremely nervous.’ ” Id. at 92. The state trooper then used a drug dog to sniff the air around Lopez’s vehicle, and the drug dog alerted to the back of the vehicle. A subsequent on-the-scene search led to the recovery of 120 pounds of marijuana. The supreme court concluded that Lopez’s “agitated demeanor and conflicting accounts of their itinerary given by the vehicle’s occupants then gave the trooper reasonable suspicion to enlarge the scope of his investigation.” Id. at 93 (emphasis added). Stated another way, the state trooper did not have the legal right to enlarge the scope of his investigation through the use of the drug dog absent reasonable suspicion that something other than a traffic violation had occurred.
Including the ruling in Lopez, Louisiana jurisprudence has been consistent in requiring that some reasonable suspicion of criminal activity other than the traffic violation for which the defendant was stopped be present to justify the use of a drug detection dog in an automobile search situation. See Washington, 687 So.2d 575; State v. Fikes, 616 So.2d 789 (La.App. 2 Cir.1993); State v. Arrington, 556 So.2d 263 (La.App. 2 Cir.1990); State v. Thompson, 543 So.2d 1077 (La.App. 2 Cir.), writ denied, 551 So.2d 1335 (La.1989); State v. Meyers, 520 So.2d 842 (La.App. 3 Cir.1987). The most frequent factual finding giving rise to reasonable suspicion in these cases was the unusual and/or extreme nervousness of the driver or occupant of the 1 ^vehicle stopped for an otherwise minor traffic violation. Other factual findings giving rise to reasonable suspicion that other criminal activity was involved included conflicting responses to questioning, the inability to produce a driver’s license or registration and insurance papers, an attempt by the driver to block the investigating officer from access to the stopped vehicle, circumstances suggesting the presence of a weapon on the driver or passenger, and the criminal history of the driver involved in the traffic stop.
Meyers, 520 So.2d 842, is an example of the proper search method for an automobile. In Meyers, a state trooper stopped Meyers on' I — 10 in Lafayette Parish for speeding. When Meyers exited his vehicle, the trooper immediately “noticed that Meyers exhibited a high level of nervous *69 ness and perspiration that, in his opinion, exceeded the usual amount for an ordinary traffic stop.” Id. at 843. An evasive answer to further questioning and a bulge in a passenger’s pocket resembling a weapon simply heightened the trooper’s suspicion. Backup units arrived at the scene, one of which carried a K-9 dog that alerted to the trunk of the vehicle. When the occupants refused the officers access to the trunk, the officers immobilized the vehicle and obtained a search warrant. The officers seized three pounds of marijuana in the ensuing search. In affirming the trial court’s rejection of the motion to suppress, the court stated:
Trooper Leblanc had probable cause to stop the vehicle for speeding. This probable cause existed for the duration of the traffic stop, however, prior to the end of this period of time, Trooper Leblanc’s experience, observations and his reasonable inferences considered as a whole, as a totality of the circumstances, substantiated the minimum requirements of reasonable cause needed to initiate the investigatory stop of defendant, [passenger], which began after the traffic citation was issued.
Id. at 846 (emphasis added).
|Jn other words, this court clearly recognized that, once the traffic stop ended, reasonable suspicion was needed to initiate any further investigation.
Unlike the officers in the cases cited herein, including Lopez, 772 So.2d 90, as relied on by the majority, Deputy Pittman did not testify that the defendant was overly nervous, that he was unable to produce the appropriate vehicle documentation, that the defendant gave conflicting responses to questioning, or that the defendant had a suspicious criminal record. All of the evidence points to the fact that this was nothing more than a traffic stop for driving while under the influence of an intoxicating beverage. The only reason given for the search was that the defendant refused to allow Deputy Pittman to search his vehicle. Standing alone, the refusal to submit to a search constitutes nothing more than “a mere hunch or vague possibility that [the defendant] ‘could’ be involved in unlawful activity,” State v. Vikesdal, 29,043, p. 8 (La.App. 2 Cir. 1/31/97); 688 So.2d 686, 690. This mere hunch or vague possibility does not equate to reasonable suspicion and is not sufficient to meet the minimum requirements necessary to begin an investigation separate from the traffic investigation for which the defendant was initially detained.
While the majority does not discuss it, the state cites State v. Boudreaux, 98-2306, 98-2307, 98-2308 (La.App. 4 Cir. 1/26/00); 752 So.2d 304. I do not find that it stands for anything other than the rule of law set forth in the previously cited cases. In Boudreaux, a Plaquemines Parish deputy initially stopped Boudreaux’s vehicle because of an illegally displayed license plate. The fourth circuit summarized the facts giving rise to the search as follows:
Officer LeGreco stated that, prior to exiting the vehicle, defendant looked through his rearview mirror and hesitated. When defendant exited the vehicle, the officer noted that he was walking “stiff arm”, i.e., with his arms straight down, and his head down. Thinking the defendant |7may have been armed, the officer conducted a pat down frisk on him. However, the officer did not locate any weapons on the defendant. Defendant gave the officer his driver’s license but did not engage the officer in any “small talk” while the officer wrote out the citation. The officer then asked defendant if he had ever been arrested, and defendant stated that he was on probation for possession of marijuana. *70 Officer LeGreco then requested defendant’s consent to search the vehicle, but defendant refused the officer’s request. The officer then called for a canine unit and, while waiting for the canine unite, conducted a plain view search of the vehicle. The officer noticed the vehicle had an expired brake tag and completed a citation for that violation.
Id. at 306.
The drug dog alerted to the lower panel on the driver’s side of Boudreaux’s vehicle, and an immediate search of the driver’s side of the vehicle resulted in the seizure of a clear plastic bag containing marijuana. Boudreaux pled guilty, reserving his Crosby appeal right to question the trial court’s rejection of his motion to suppress.
The fourth circuit summarized the disposition of the case in the following manner:
In the present case, defendant argues that there was no probable cause to justify the canine search of his vehicle. However, a canine search of an object is not a “search” within the meaning of the Fourth Amendment. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); U.S. v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); cf. Horton v. Goose Creek Ind. Sch. Dist., 690 F.2d 470 (5 Cir.1982), cert. denied, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 [(1983)], and La. Atty. Gen. Op. No. 97-8[2], 1997 WL 165489 (a canine sniff of a person may qualify as a “search”). Thus, the “free air search” by the sergeant’s dog did not impinge upon defendant’s rights. When the dog alerted to the driver’s side of the vehicle, the police gained probable cause to believe that defendant’s vehicle contained contraband. State v. Meyers, 520 So.2d 842 (La.App. 3 Cir.1987). The subsequent search of the car and seizure of the contraband by the police were then proper under Ross and Tatum, supra.
Id. at 307.
Thus, the issue in Boudreaux was not whether the officer had reasonable suspicion to investigate past the initial traffic violation, given Boudreaux’s “hesitation” in ^exiting the vehicle, his “stiff arm[ed]” method of walking, and his admission to being on probation for a narcotics violation. Instead, the defendant attempted to impose a “probable cause” requirement to the use of the drug dog. The fourth circuit correctly recognized that the free air search by the drug dog helped generate the probable cause necessary for the officer to search the vehicle, but only after the officer had developed a reasonable suspicion that further criminal activity might be present based on other evidence.
Thus, I also disagree with the state’s argument that Boudreaux should be construed to suggest that Meyers and Ross stand for the proposition that an officer may use a drug dog in a traffic stop absent reasonable suspicion of criminal activity other than the traffic violation giving rise to the original stop. Such an interpretation of the automobile exception set forth in Carroll would mean that any officer, at any time he or she makes a traffic stop, can lawfully detain any driver and proceed with a “free air search” with a drug dog. This holding would expose citizens who have committed nothing more than a minor traffic violation to the humiliation and embarrassment of being detained on the side of the highway while a drug dog circles his or her automobile without any reason other than the officer’s whim. Such activity would render the constitutional safeguards of U.S. Const, amend. IV and La. Const, art. I, § 5 without effect.
While it is not a private automobile drug dog sniff ease, Vikesdal supports my con- *71 elusion in this case. In Vikesdal, the evidence established that the Logansport City Police had an agreement with an interstate public bus company in which, pursuant to a prearranged signal, the bus would stop at the Logansport Police Station and allow the officers to use “a trained dog which would “work’ the bus by sniffing lathe luggage of the passengers on the bus.” Id. at 687. On the occasion at issue, the dog “alerted” to Vikesdal’s luggage. Vikesdal declined the police request for consent to search his luggage, but the officers opened it anyway and seized marijuana.
Vikesdal entered a guilty plea to the charge of possession of marijuana with intent to distribute, reserving his Crosby appeal rights. In reversing the judgment denying the motion to suppress, the second circuit stated that “[w]hile vehicular travelers in general may have a reduced expectation of privacy while on the road than they have within the confines of their home, they do not abandon all constitutional protection by entering a vehicle, whether public or private.” Id. at 689 (emphasis added). In concluding that the law enforcement officers did not have reasonable suspicion to expose Vikesdal’s luggage to a trained narcotics detection dog, the second circuit distinguished those cases which seemed to hold that reasonable suspicion is not required to detain property of an individual for screening by a drug dog if the property is not in the possession of the owner. The court stated:
In this case, however, Vikesdal was in possession of his luggage on the bus and was detained when the bus was stopped by police at the police station to conduct the canine screening of his and the other passengers’ bags. In circumstances where the defendant is detained for some or all of the police encounter which includes the screening of his property by the drug dog, the legality of detaining the defendant before the sniff test is conducted presents an issue which is separate and distinct from the legality of the police conduct, human and canine, which occurs after the initial stop....
The state has not cited any case, state or federal, upholding the seizure or detention of the defendant’s person for the sole purpose of subjecting his property to a canine sniff test in circumstances where the police have no individualized grounds of whatever degree, probable cause or reasonable suspicion, to believe that the defendant or his property has been, is, or is going to be, engaged in criminal activity.
Id. at 690.
I do note that the court in. Vikesdal relied in part on the supreme court’s 1,ndecisión in State v. Church, 538 So.2d 993 (La.1989), which has been specifically overruled in State v. Jackson, 00-0015 (La.7/6/00); 764 So.2d 64. However, the supreme court’s ruling in Jackson does not change my conclusion in this matter, but supports it.
In Jackson, the issue involved the validity of law enforcement highway checkpoints to determine liability insurance compliance. The supreme court established the criteria by which it would analyze whether a checkpoint operation would pass constitutional scrutiny:
(1) [t]he location, time and duration of a checkpoint, and other regulations for operation of the checkpoint, preferably in written form, established by supervisory or other administrative personnel rather than the field officers implementing -the checkpoint;
(2) advance warning to the approaching motorist with signs, flares and other indications to warn of the impending stop in a safe manner and to provide notice of its official nature as a police checkpoint;
*72 (3) detention of the motorist for a minimal length of time; and
(4) use of a systematic nonrandom criteria for stopping motorists.
Id. at 72-73.
Absent compliance with these guidelines, an insurance checkpoint will not “withstand constitutional muster under the Fourth Amendment and Louisiana’s Article I, § 5.” Id. at 72.
Certainly, Deputy Pittman’s decision to search the defendant’s vehicle lacked any “systematic nonrandom criteria” for doing so. Further, if a checkpoint requires such specificity to withstand constitutional muster, it follows that a totally random detention without any reasonable suspicion whatsoever fails to withstand the same scrutiny.
Having concluded that Deputy Pittman’s search and seizure did not fall within luthe automobile exception to the search warrant requirement, I would also conclude that it does not fall under the “inevitable discovery doctrine” either. Recognized in Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the doctrine “only comes into play when the pertinent evidence is the product of illegal government activity and would have been discovered inevitably by lawful means without regard to the illegality.” State v. Franklin, 95-1876, p. 5 (La.1/14/97); 686 So.2d 38, 41. The doctrine is not applicable in this case because Deputy Pittman released the truck driven by the defendant to the defendant’s father. This was done at the scene such that no inventory search was ever contemplated.
It is distasteful to have to recognize a constitutional violation that sets a conviction aside when the well-meaning but unreasonable search and seizure actually produces contraband. We know, after the fact, that the defendant did possess contraband. However, the state did not carry its burden of proof with regard to the motion to suppress. We do not know if Deputy Pittman suspected that the defendant’s intoxicated condition might have been a result of a controlled dangerous substance because his testimony did not touch on that subject. All we have before us is his testimony that he stopped an obviously intoxicated defendant who smelled strongly of alcohol, and nothing else. Grant Parish is one of the state’s smaller parishes, and we do not know if Deputy Pittman otherwise knew the defendant and his background such that he might have suspected that the defendant had contraband in his possession. The deputy did not testify concerning his knowledge of the defendant. • Additionally, we do not know if Deputy Pittman checked the defendant’s criminal record because there is no testimony on that subject as well.
The basic rights guaranteed by the United States and Louisiana Constitutions 1 ^should be construed as the rule rather than the exception. The warrantless search of an automobile is the exception and should not be unduly expanded but applied only in the most narrow of circumstances. I am concerned that we are, by this decision, suggesting that the state does not have to articulate the reasonable suspicion required for a warrantless search so long as the court can articulate an acceptable unstated reasonable suspicion on its own based on a bare bones factual presentation. I would reverse the trial court’s judgment and grant the motion to suppress.